

Christopher J. Passarelli, SBN 241174
cp@dpf-law.com
Brett J. Leininger, SBN 329579
bleininger@dpf-law.com
DICKENSON PEATMAN & FOGARTY
1500 First Street, Suite 200
Napa, CA 94559
Telephone: (707) 261-7000
Facsimile: (707) 340-7239

Attorneys for Plaintiff
AMICI INVESTMENTS, LLC

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMICI INVESTMENTS, LLC, | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | 1. **Breach of Contract;** |
| VIA ROMANO VINEYARDS INC, a California Corporation; JONATHAN MARK CHEWNING, an individual; and LEANNE RENEE DAVIS, an individual, | 2. **Breach of Covenant of Good Faith and Fair Dealing;** |
| | 3. **Federal Trademark Infringement** |
| | 4. **Federal Unfair Competition and False Designation of Origin;** |
| Defendants. | 5. **Common Law Trademark Infringement; and** |
| | 6. **California Unfair Business Practices.** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff, Amici Investments, LLC, ("Amici Investments" or "Plaintiff"), for its Complaint against Defendants Via Romano Vineyards Inc. ("Via Romano"), Jonathan Mark Chewning ("Chewning"), and Leanne Renee Davis ("Davis") (collectively, "Defendants"), alleges as follows:

### NATURE OF ACTION

1.      This is an action for breach of contract, federal trademark infringement, unfair competition (15 U.S.C. § 1125(a)), common law trademark infringement, and violation of the California Business Professions Code § 17200, *et seq.*, due to Defendants' willful use of a colorable imitation of Plaintiff's registered AMICI trademark, as well as other asserted trademarks. Plaintiff

seeks monetary damages for breach of the Settlement Agreement effective May 5, 2020, and Plaintiff's related losses due to trademark infringement, as well as, orders for preliminary and/or permanent injunctive relief restraining Defendants' infringement of Plaintiff's AMICI marks, attorneys' fees, and related relief.

### THE PARTIES

2.      Plaintiff Amici Investments, LLC, is a California limited liability company with its principal place of business located at 3130 Old Lawley Toll Road, Calistoga, CA 94515.

3.      Plaintiff Amici Investments owns each of the registrations asserted against Defendants in this Complaint, including U.S. Trademark Registration No. 3,053,034 for the mark AMICI for wine, and Reg. No. 5,820,101 for the mark AMICI WINEMAKER'S for alcoholic beverages except beers. It licenses each of the trademarks and/or registrations discussed herein to Amici Cellars, Inc., ("Amici Cellars") which uses the marks in commerce in connection with wine. Plaintiff and Amici Cellars are related companies under 15 U.S.C. § 1055.

4.      Upon information and belief, Defendant Via Romano Vineyards Inc. is a California corporation with its principal place of business located at 3592 Cedar Ravine Road, Placerville, CA 95623.

5.      Upon information and belief, Defendant Jonathan Mark Chewning is an individual with a business or personal address at 3592 Cedar Ravine Road, Placerville, CA 95623. Upon information and belief, Mr. Chewning is and was an owner, officer, and principal of Via Romano at all relevant times for the conduct alleged in this Complaint.

6.      Upon information and belief, Defendant Leanne Renee Davis is an individual with a business or personal address at 3592 Cedar Ravine Road, Placerville, CA 95623. Upon information and belief, Ms. Davis is and was an owner, officer, and principal of Via Romano at all relevant times for the conduct alleged in this Complaint.

7.      Upon information and belief, each and every defendant herein is or was the agent and/or employee of the remaining defendants, and in doing the things herein alleged acted within the course and scope of said agency and employment.

//

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction of Plaintiff's claims under and pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1131 and 1338(a), as the claims arise under the federal Lanham Act, 15 U.S.C. § 1051, *et seq.* This Court also has pendent jurisdiction over all related claims herein in accordance with 28 U.S.C. § 1338(b) and supplemental jurisdiction over any remaining claims pursuant to 28 U.S.C. § 1367(a).

9.      Upon information and belief, Defendants, either directly or through their agents, transacted business in the State of California and within this judicial district, as more specifically set forth below, and otherwise expected or should reasonably have expected their acts to have consequences in the State of California and within this judicial district.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), as Defendants are doing business in this judicial district and therefore may be found in this district, and/or as a substantial part of the events giving rise to the claims alleged herein occurred in this district, and/or the infringement occurred in this judicial district.

## ALLEGATIONS COMMON TO ALL CLAIMS

11.     Plaintiff Amici Investments is the owner of the trademark AMICI for wine and of incontestable U.S. Trademark Registration No. 3,053,034 for AMICI for "wine" in International Class 33, issued on January 31, 2006 (the "AMICI Mark"). Amici Investments also owns U.S. Trademark Registration No. 5,820,101 for AMICI WINEMAKER'S, also for "wine" in International Class 33, issued on July 30, 2019 (the AMICI WINEMAKER'S mark and the AMICI Mark, collectively, the "AMICI Marks"). Plaintiff has used the AMICI Mark on and in association with wine since at least as early as 1988, long before the acts of Defendants alleged herein. Exhibit A is a true and correct copy of the registration certificates for the AMICI Marks.

12.     Amici Investments licenses the AMICI Marks to Amici Cellars which produces world-class wines from Napa Valley and Sonoma that are sold and shipped throughout the United States under the AMICI Marks. (For simplicity, this wine is referred to herein as Plaintiff's or Amici's wine.)

13.     Amici's wines have garnered national attention for their quality and have been

favorably reviewed by respected wine critics and leading wine publications. The current release of Amici wines features, *inter alia*, several 97 – 99-point Cabernet Sauvignons, a 97-point Chardonnay, and a 97-point Pinot Noir, with ratings from James Suckling, Jeb Dunnuck, and Robert Parker's *Wine Advocate.*

14.     As a result of the widespread promotion, distribution, and sale of AMICI wine, consumers across the country seek out AMICI wine for their cellars. Plaintiff owns extremely valuable goodwill in the AMICI Marks, and the marks have extraordinary financial value to Plaintiff.

15.     Upon information and belief, Defendant Via Romano was formed in 2016 in Carmichael, California by Defendants Chewning and Davis.

16.     Upon information and belief, in or around February 19, 2020, Defendant Via Romano obtained a Certificate of Label Approval ("COLA") (TTB #20043001001068) from the Alcohol and Tobacco Tax and Trade Bureau ("TTB") for wine labels bearing the mark VINO DEGLI AMICI. As described in further detail below, Defendants subsequently surrendered TTB #20043001001068. Exhibit B is a true and correct copy of the surrendered COLA for wine labels under the mark VINO DEGLI AMICI.

17.     On information and belief, beginning in or around 2019, Via Romano marketed, distributed, and sold wine in bottles bearing the mark VINO DEGLI AMICI via its website, in its tasting room, and shipped to numerous states.

18.     On March 31, 2020, Plaintiff's counsel sent a letter to Defendants Chewning and Via Romano, informing Defendants of Plaintiff's superior rights in and to the AMICI Marks and asserting a likelihood of confusion between the AMICI Marks and the VINO DEGLI AMICI mark. Plaintiff demanded that Defendants surrender to the TTB any COLAs bearing the VINO DEGLI AMICI mark, and cease any further use of the VINO DEGLI AMICI mark, including any production, marketing, distribution, or sale of alcohol bearing AMICI, or any other mark similar to the AMICI Marks.

19.     Defendants' counsel David Scribner responded to Plaintiff's counsel on April 6, 2020, to discuss settlement of the AMICI Marks infringement allegations.

20.     On May 7, 2020, Defendant Via Romano entered into a settlement agreement ("Settlement Agreement"), which was signed by Defendant Chewning, whereby they agreed, *inter alia*, to "cease any and all use of the name and/or mark VINO DEGLI AMICI, as well as any other name or mark incorporating the term 'AMICI'" (Section 1), to "cease producing, distributing, marketing, and selling alcohol beverage products in association with any name or mark that incorporates the term 'AMICI'" (Section 2), to not "engage in marketing tactics that attempt to derive benefit from the Amici Mark" (Section 3), and to "not seek future COLAs for any label that incorporates the AMICI Mark" (Section 6). Exhibit C is a true and correct copy of the Settlement Agreement executed May 7, 2020.

21.     The Settlement Agreement also required Defendants to certify compliance with all terms by October 27, 2020. (Section 7)  Receiving no such certification from Defendants, on October 29, 2020, Plaintiff's counsel contacted Defendants' counsel to request swift and full compliance, including written confirmation of compliance by November 3, 2020.

22.     On November 1, 2020, Defendants' counsel forwarded written confirmation of full compliance to Plaintiff's counsel. Exhibit D is a true and correct copy of the written confirmation of full compliance.

23.     On May 8, 2021, Plaintiff's counsel contacted Defendants' counsel to inform him that, despite Via Romano's representations that it had stopped using the VINO DEGLI AMICI mark and sold and disposed of its entire inventory of the infringing wine, it appeared that Via Romano had continued to market and sell VINO DEGLI AMICI wine via its website as part of its "Wine & Design in a Box" collections, in breach of the Settlement Agreement.

24.     On May 13, 2021, Defendant Chewning responded directly to Plaintiff's counsel, stating that the links on their website were merely an oversight, the links were non-functional, and the wine was not intended to be available for sale on the website.

25.     On August 11, 2021—only three months after Plaintiff had found Via Romano in breach of the Settlement Agreement—third party Alvarez Vineyards, LLC dba Miraflores Winery ("Miraflores") obtained COLA TTB # 21223001000523 for a Via Romano wine label bearing a new BUON'AMICI mark. Upon information and belief, Defendants instructed or authorized Miraflores

to submit this COLA application on Defendants' behalf, with knowledge of Plaintiff's AMICI Marks. <u>Exhibit E</u> is a true and correct copy of the BUON'AMICI COLA.

26.     On or around June 2023, Plaintiff became aware of Via Romano's advertising and apparent sale of the BUON'AMICI wine online at Via Romano's website.[1]

27.     Upon information and belief, since around July 31, 2021, Defendants have used the BUON'AMICI mark to market, sell, and distribute wine to consumers in the United States, including in this district. As of the filing of this Complaint, Defendants continue to use the BUON'AMICI mark.

28.     Upon information and belief, the BUON'AMICI-branded wine is the same wine as the VINO DEGLI AMICI-branded wine, or its replacement in Via Romano's product lineup. Except for the vintage and the use of Dolcetto grapes, the product copy describing the BUON'AMICI wine on Via Romano's website is identical to the product copy that Via Romano used in connection with the VINO DEGLI AMICI wine. Via Romano simply switched out one infringing mark for another on the same product.

29.     Defendants adopted the BUON'AMICI mark, and obtained the COLA for a label bearing that mark, after the Parties had executed the Settlement Agreement and after Defendants had certified compliance therewith. Nevertheless, the BUON'AMICI mark incorporates the entirety of Plaintiff's AMICI Mark, in clear and obvious violation of Sections 1 – 3 & 6 of the Settlement Agreement.

30.     Defendants Chewning and Davis are owners and officers of Via Romano, and are bound by the terms of the Settlement Agreement, pursuant to Section 12 of that agreement.

31.     Defendants' adoption and/or use of the BUON'AMICI mark in commerce was subsequent to Plaintiff's adoption, use, and registration of each of the AMICI Marks.

32.     Defendants' BUON'AMICI mark is confusingly similar in appearance, sound, meaning, connotation, and overall commercial impression to Plaintiff's AMICI Marks, and the AMICI Mark, in particular. Defendants' addition of "BUON'," which means "good" in Italian, to

---

[1] https://www.vrv.vin/product/NV-Buonamici?pageID=3D6CD8DC-0A43-D3B6-51BA-E04E25812D80&sortBy=DisplayOrder&maxRows=12& (last visited July24, 2023)

"AMICI" does not distinguish the marks, as it merely adds a common laudatory adjective to the mark, "AMICI" ("friends"). The BUON'AMICI mark incorporates Plaintiff's AMICI Mark in its entirety. "AMICI" is the dominant element of each mark. Moreover, Defendants use the BUON'AMICI mark on goods identical to those offered by Plaintiff under the AMICI Marks, namely, wines.

33.    Defendants' use of the BUON'AMICI mark is likely to confuse consumers into believing that Defendants' BUON'AMICI wine is affiliated with, associated with, connected to, or sponsored by Plaintiff and its AMICI wine (or vice versa), and Defendants will unjustly benefit from such association.

34.    Plaintiff will be further harmed as consumers will purchase the BUON'AMICI wine believing it to be AMICI wine or to be affiliated with, associated with, connected to, or sponsored by Plaintiff, and thereby forego purchase of AMICI wine, resulting in loss of sales to Plaintiff from Defendants' unfair competition.

35.    Defendants' use of the BUON'AMICI mark will also diminish the value of Plaintiff's AMICI Marks and endanger the ability of Plaintiff's AMICI Marks to serve as unique and distinctive source indicators for Plaintiff and Plaintiff's goods.

36.    Unless restrained by this Court, Defendants will continue to unfairly compete with Plaintiff by using the BUON'AMICI mark, wherefore Plaintiff is without adequate remedy at law. Defendant Via Romano apparently has not ceased and will not cease using marks incorporating the term AMICI, including the BUON'AMICI mark, in connection with the sale of wine, despite Plaintiff's prior repeated efforts via counsel, and despite having agreed to cease in writing. Without a restraint from the Court, nothing will prevent Defendants from continuing their use of the BUON'AMICI mark.

37.    Defendants adopted and began using the BUON'AMICI mark with knowledge of Plaintiff's rights, having already received notice of Plaintiff's registered trademarks through Plaintiff's multiple demand letters and emails. Moreover, despite the express terms of the Settlement Agreement that clearly prohibit Defendants' use of marks incorporating "AMICI," Defendants never attempted to seek clarification or otherwise notify Plaintiff of its intent to produce wine under



yet another AMICI-based trademark. Accordingly, Defendants' adoption and use of the BUON'AMICI mark was willful and knowing.

38.     Upon information and belief, Defendants Chewning and Davis own and control Via Romano, developed the BUON'AMICI mark, and directed Via Romano to adopt and use the mark in commerce in connection with wine.

39.     On information and belief, Defendants Chewning and Davis, in their individual capacities, directed Miraflores to apply for a COLA application for or on behalf of Via Romano in an ill-conceived attempt to evade detection and otherwise circumvent the express terms the Settlement Agreement. Accordingly, Mr. Chewning and Ms. Davis are the guiding spirit behind Via Romano's infringement, and they may be held personally liable for Via Romano's tortious conduct alleged herein.

## **FIRST CAUSE OF ACTION**

### **(Breach of Contract)**

### **(Against All Defendants)**

40.     Plaintiff incorporates the allegations of Paragraphs 1 through the immediately preceding paragraph, inclusive and the acts of Defendants asserted therein as if set forth in full as part of this Cause of Action.

41.     The Settlement Agreement executed May 7, 2020, is a valid contract, binding upon Plaintiff and Defendants.

42.     Defendants' agreement to not use marks that incorporate "AMICI" was a material, bargained-for term of the Settlement Agreement.

43.     Plaintiff has performed all of its obligations under the Settlement Agreement, and there are no conditions precedent to Defendants' performance that have not been met.

44.     Defendants' above-alleged actions, including, without limitation, Defendants' adoption and use of the BUON'AMICI mark, which incorporates the AMICI Mark in its entirety, and Defendants' obtaining a COLA for a label that incorporates the AMICI Mark, constitute material, willful breaches of the Settlement Agreement.

45.     Defendants' above-alleged breaches of the contract have injured Plaintiff in an

amount to be proven at trial.

46.     Plaintiff is entitled to damages for Defendants' breach of the Settlement Agreement.

**SECOND CAUSE OF ACTION**

**(Breach of the Covenant of Good Faith and Fair Dealing)**

**(Against All Defendants)**

47.     Plaintiff incorporates the allegations of Paragraphs 1 through the immediately preceding paragraph, inclusive, and the acts of Defendants asserted therein as if set forth in full as part of this Cause of Action.

48.     Plaintiff has identified new violations of the Settlement Agreement since the effective date thereof. Defendants' past or ongoing violations constitute breaches of the Settlement Agreement, and such violations, individually or collectively, and Defendants' failure to self-identify and cure all such violations in the three years since Defendants executed the Settlement Agreement, demonstrate that Defendants have not made a good faith effort to comply with the Settlement Agreement.

49.     The Settlement Agreement necessarily presumed that all parties would make a good faith effort to comply with the Settlement Agreement.

50.     Defendants have refused to undertake a diligent, comprehensive effort to comply with the terms of the Settlement Agreement, and unilaterally placed the onus on Plaintiff to discover all new violations subsequent to the signing the Settlement Agreement. This game of cat and mouse has greatly shifted the resource burden of seeking Defendants' compliance onto Plaintiff.

51.     Plaintiff has complied with all of its obligations under the Settlement Agreement. In reliance on Defendants' representations that they would make a good faith effort to comply with the Settlement Agreement, Plaintiff released Defendants from liability arising from Defendants' prior use of AMICI-formative marks prior to the effective date.

52.     As a result of Defendants' subsequent affirmative material breaches, and their failures to self-identify and cure breaches, Plaintiff has been altogether deprived of the benefit of its bargain. Plaintiff twice previously abstained from bringing an action (once for infringement, and subsequently for breach of the Settlement Agreement), but Defendants nevertheless continue to use

AMICI-formative marks on new products as identified herein.

53.     Plaintiff has expended substantial resources identifying breaches and attempting to obtain Defendants' compliance, and Plaintiff has been injured by Defendants' continued use of AMICI-formative marks and other conduct prohibited by the Settlement Agreement.

### THIRD CAUSE OF ACTION

**(Federal Trademark Infringement under 15 U.S.C. § 1114)**

**(Against All Defendants)**

54.     Plaintiff incorporates the allegations of Paragraphs 1 through the immediately preceding paragraph, inclusive and the acts of Defendants asserted therein as if set forth in full as part of this Cause of Action.

55.     Defendants' actions constitute use in commerce of a mark confusingly similar to Plaintiff's registered AMICI Mark, Reg. No. No. 3,053,034, and/or AMICI WINEMAKER'S Mark, Reg. No. 5,820,101 without Plaintiff's consent, in connection with the sale, offering for sale, distribution, or advertising of goods in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

56.     Despite knowledge of Plaintiff's superior right, priority, and continued use of the AMICI Marks, Defendants nevertheless continue to produce, promote, distribute, offer for sale, and sell wine using the BUON'AMICI mark in U.S. commerce and within the State of California.

57.     Defendants' conduct constitutes trademark infringement in violation of 15 U.S.C. § 1114.

58.     Plaintiff is and will continue to be harmed by the confusion or reverse confusion arising from Defendants' use of the BUON'AMICI mark, and Defendants have and will continue to unjustly benefit from such confusion or reverse confusion among consumers.

59.     Upon information and belief, Defendants' use of the BUON'AMICI mark has unjustly and wrongfully increased the profitability of Defendants' various wine brands to the detriment of Plaintiff and at no cost to Defendants.

60.     Plaintiff seeks damages for Defendants' acts of infringement occurring since the effective date of the Settlement Agreement.

61. This case is an exceptional case entitling Plaintiff to treble damages and attorney's fees, and Defendant' conduct further entitles Plaintiff to punitive damages.

## FOURTH CAUSE OF ACTION

### (Federal Unfair Competition under 15 U.S.C. § 1125(a))

### (Against All Defendants)

62. Plaintiff incorporates the allegations of Paragraphs 1 through the immediately preceding paragraph, inclusive, and the acts of Defendants asserted therein as if set forth in full as part of this Cause of Action.

63. In violation of 15 U.S.C. § 1125(a), Defendants' use of the BUON'AMICI mark constitutes unfair competition through the use in commerce of a word, name or device, or false designation of origin, that is likely to cause confusion or mistake or to deceive as to affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of the goods offered in connection therewith.

64. Defendants knew, or should have known of Plaintiff's rights, and Defendants' unfair competition was knowing, willful, and deliberate, making this an exceptional case under 15 U.S.C. § 1117.

65. Plaintiff has been, and will continue to be, damaged by such unfair competition in a manner and amount that cannot be fully measured or compensated in economic terms. Defendants' actions have damaged, and will continue to damage, Plaintiff's rights, reputation and goodwill and may discourage current and potential customers from dealing with Plaintiff. Such irreparable harm will continue unless Defendants' acts are restrained and/or enjoined during the pendency of this action and thereafter.

66. Plaintiff seeks damages for unfair competition occurring since the effective date of the Settlement Agreement.

67. Plaintiff has been damaged by Defendants' actions in an amount to be proven at trial.

//

//

//

### FIFTH CAUSE OF ACTION

### (State and Federal Common Law Trademark Infringement)

### (Against All Defendants)

68.     Plaintiff incorporates the allegations of Paragraphs 1 through the immediately preceding paragraph, inclusive, and the acts of Defendants asserted therein as if set forth in full as part of this Cause of Action.

69.     Defendants' above-averred actions constitute trademark infringement, trade name infringement, passing off, false designation of origin and unfair competition in violation of the common law of the State of California and the United States of America.

70.     Plaintiff seeks damages for Defendants' acts of infringement occurring since the effective date of the Settlement Agreement.

71.     Plaintiff has no adequate remedy at law for Defendants' above-stated wrongful acts and thus is entitled to injunctive relief.

### SIXTH CAUSE OF ACTION

### (Unfair Business Practices; Cal. Bus. & Prof. Code. § 17200)

### (Against All Defendants)

72.     Plaintiff incorporates the allegations of Paragraphs 1 through the immediately preceding paragraph, inclusive, and the acts of Defendants asserted therein as if set forth in full as part of this Cause of Action.

73.     Upon information and belief, Defendants' use of the BUON'AMICI mark on wine products and advertising fosters a misperception among consumers and the trade, that Defendants and Defendants' wine products share an origin with Plaintiff and Plaintiff's AMICI-branded wine products.

74.     Upon information and belief, Defendants' aforesaid actions were and continue to be deliberate and willful.

75.     Defendants' actions, including use of the BUON'AMICI mark in commerce to advertise, market, and sell wine throughout the United States, constitute unlawful unfair or fraudulent business acts or practices, and unfair competition in violation of Cal. Bus. & Prof. Code

§ 17200 *et seq.*, and as a result Plaintiff has suffered and will continue to suffer damage to its business, reputation, and goodwill.

76.     Plaintiff seeks damages for Defendants' unfair competition occurring since the effective date of the Settlement Agreement.

77.     As a direct and proximate result of Defendants' willful and intentional actions, Plaintiff has suffered damages in an amount to be determined at trial, and, unless Defendants are restrained, Plaintiff will continue to suffer irreparable damage.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that judgment be entered as follows:

1.     That Plaintiff be awarded damages for Defendants' breach of the Settlement Agreement and breach of the covenant of good faith and fair dealing;

2.     That Defendants, their principals, partners, franchisees, agents, employees, licensees, affiliates, distributors, producers, any related, parent and subsidiary company, attorneys and representatives and all those in privity with or acting under their direction and/or pursuant to their control, be enjoined and restrained from directly or indirectly;

(a)     Using the AMICI Marks, or the BUON'AMICI mark, or any confusingly similar mark, in connection with the advertisement, promotion, distribution, offering for sale, or sale of alcohol beverage products, or products or services related to alcohol beverage products;

(b)     Performing any acts or using any trademarks, names, words, images, or phrases that are likely to cause confusion, to cause mistake, to deceive or otherwise mislead the trade or public into believing that Plaintiff and Defendants are one in the same, or are in some way connected, or that Plaintiff is a sponsor of Defendants, or that Defendants' goods originate with Plaintiff, or that Defendants are a sponsor of Plaintiff, or that Plaintiff's goods originate with Defendants, or any other acts which are likely to lead the trade or public to associate Defendants with Plaintiff, or Plaintiff with Defendants;

3.     That Defendants be required to file with the Court, and serve on Plaintiff, a statement under oath evidencing compliance with any preliminary or permanent injunctive relief ordered by the Court within fourteen (14) days after the entry of such order of injunctive relief;

4.     That Defendants, their principals, partners, franchisees, agents, employees, licensees, affiliates, distributors, producers, any related, parent and subsidiary companies, attorneys and representatives and all of those in privity with or acting under its direction and/or pursuant to their control, be required to deliver up for destruction all advertising, promotional materials, point of sale materials, labels, caps, neckers, packaging, and any other materials bearing the BUON'AMICI mark, together with all artwork, plates, molds, matrices, and other means and materials for making and reproducing the same;

5.     That Defendants be ordered to recall all infringing products bearing the BUON'AMICI mark in the marketplace from wholesalers and retailers;

6.     That Defendants be ordered to disclose, account for and disgorge their wrongful profits or otherwise pay to Plaintiff monetary damages for the harm resulting from Defendants' unlawful acts, including compensation for Defendants' unauthorized use of the BUON'AMICI mark, and/or Plaintiff's AMICI Marks, in an amount to be determined at trial;

7.     That Plaintiff's damages award be trebled and that Defendants be ordered to pay Plaintiff's attorneys' fees on the basis that this is an exceptional case;

8.     That Plaintiff be awarded punitive damages as a result of Defendants' egregious, recalcitrant misconduct;

9.     That Defendants be ordered to pay Plaintiff the amount by which Defendants have been unjustly enriched, which amount is presently unknown and shall be determined at trial; and

//

//

//

10.     That Plaintiff be granted such other and further relief as this Court shall deem just and equitable.

Dated: July 26, 2023

Respectfully submitted,

**DICKENSON, PEATMAN & FOGARTY**

By _____
Christopher J. Passarelli
Brett J. Leininger
1500 First Street, Ste. 200
Napa, California 94559
Telephone: 707-252-7122
Facsimile: 707-340-7239

Attorneys for Plaintiff,
Amici Investments, LLC

1

<u>DEMAND FOR JURY TRIAL</u>

2

Plaintiff hereby requests a trial by jury in this matter.

3

Dated: July 26, 2023

4

5

Respectfully submitted,
DICKENSON, PEATMAN & FOGARTY

6

7

8

By _____
Christopher J. Passarelli

9

10

1500 First Street, Ste. 200
Napa, California 94559
Telephone: 707-252-7122
Facsimile: 707-340-7239

11

12

Attorneys for Plaintiff,
Amici Investments, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Int. Cl.: 33

Prior U.S. Cls.: 47 and 49

**United States Patent and Trademark Office**

Reg. No. 3,053,034

Registered Jan. 31, 2006

## TRADEMARK
### PRINCIPAL REGISTER

## AMICI

AMICI CELLARS, INC. (CALIFORNIA COR-
  PORATION)
POST OFFICE BOX 399
RUTHERFORD, CA 94573

  FOR: WINE, IN CLASS 33 (U.S. CLS. 47 AND 49).

  FIRST USE 12-31-1988; IN COMMERCE 5-31-1994.

THE FOREIGN WORDING IN THE MARK
TRANSLATES INTO ENGLISH AS FRIENDS.

  SER. NO. 78-279,520, FILED 7-28-2003.

PAULA MAYS, EXAMINING ATTORNEY

# United States of America

## United States Patent and Trademark Office



**Reg. No. 5,820,101**

**Registered Jul. 30, 2019**

**Int. Cl.: 33**

**Trademark**

**Principal Register**

Amici Investments, LLC  (CALIFORNIA LIMITED LIABILITY COMPANY)
474 Eleanor Drive
Woodside, CALIFORNIA 94062

CLASS 33: Alcoholic beverages except beers

FIRST USE 12-31-2011; IN COMMERCE 12-31-2011

The mark consists of the stylized words "AMICI WINEMAKER'S".

OWNER OF U.S. REG. NO. 3053034

No claim is made to the exclusive right to use the following apart from the mark as shown: "WINEMAKER'S"

The English translation of "AMICI" in the mark is "FRIENDS".

SER. NO. 88-241,618, FILED 12-26-2018

Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# EXHIBIT B

| **FOR TTB USE ONLY** | **DEPARTMENT OF THE TREASURY**<br>ALCOHOL AND TOBACCO TAX AND TRADE BUREAU<br>**APPLICATION FOR AND**<br>**CERTIFICATION/EXEMPTION OF LABEL/BOTTLE**<br>**APPROVAL**<br>*(See Instructions and Paperwork Reduction Act Notice on Back)* |
|---|---|

**TTB ID**
20043001001068

| **1. REP. ID. NO.** *(If any)* | **CT** 88 | **OR** 01 |
|---|---|---|

## PART I - APPLICATION

| **2. PLANT REGISTRY/BASIC PERMIT/BREWER'S NO.** *(Required)*<br>BWN-CA-22190 | **3. SOURCE OF PRODUCT** *(Required)*<br>☑ Domestic<br>☐ Imported | **8. NAME AND ADDRESS OF APPLICANT AS SHOWN ON PLANT REGISTRY, BASIC PERMIT OR BREWER'S NOTICE. INCLUDE APPROVED DBA OR TRADENAME IF USED ON LABEL** *(Required)*<br><br>VIA ROMANO VINEYARDS, Via Romano Vineyards Inc.<br>3400 CARSON CT STE D<br><br>Placerville CA 95667 |
|---|---|---|

| **4. SERIAL NUMBER** *(Required)*<br>201000 | **5. TYPE OF PRODUCT** *(Required)*<br>☑ WINE<br>☐ DISTILLED SPIRITS<br>☐ MALT BEVERAGE | |

| **6. BRAND NAME** *(Required)*<br>VIA ROMANO VINEYARDS | **8a. MAILING ADDRESS, IF DIFFERENT** |
|---|---|
| **7. FANCIFUL NAME** *(If any)*<br>VINO DEGLI AMICI | |

| **9. FORMULA** | **10. GRAPE VARIETAL(S)** *(Wine Only)*<br>N/A | **14. TYPE OF APPLICATION** *(Check applicable box(es))* |
|---|---|---|
| **11. WINE APPELLATION** *(If on label)*<br>EL DORADO | | a. ☑  CERTIFICATE OF LABEL APPROVAL<br><br>b. ☐  CERTIFICATE OF EXEMPTION FROM LABEL APPROVAL "For sale in _____ only" (Fill in State abbreviation.)<br><br>c. ☐  DISTINCTIVE LIQUOR BOTTLE APPROVAL. TOTAL BOTTLE CAPACITY BEFORE CLOSURE ____ ____ (Fill in amount)<br><br>d. ☑  RESUBMISSION AFTER REJECTION TTB ID. NO. ___19212001000316___ |
| **12. PHONE NUMBER**<br>(916) 502-5502 | **13. EMAIL ADDRESS** | |

15. SHOW ANY INFORMATION THAT IS BLOWN, BRANDED, OR EMBOSSED ON THE CONTAINER (e.g., net contents) ONLY IF IT DOES NOT APPEAR ON THE LABELS AFFIXED BELOW. ALSO, SHOW TRANSLATIONS OF FOREIGN LANGUAGE TEXT APPEARING ON LABELS.

## PART II - APPLICANT'S CERTIFICATION

Under the penalties of perjury, I declare; that all statements appearing on this application are true and correct to the best of my knowledge and belief; and, that the representations on the labels attached to this form, including supplemental documents, truly and correctly represent the content of the containers to which these labels will be applied. I also certify that I have read, understood and complied with the conditions and instructions which are attached to an original TTB F 5100.31, Certificate/Exemption of Label/Bottle Approval.

| **16. DATE OF APPLICATION**<br>02/12/2020 | **17. SIGNATURE OF APPLICANT OR AUTHORIZED AGENT**<br>(Application was e-filed) | **18. PRINT NAME OF APPLICANT OR AUTHORIZED AGENT**<br>Leanne Davis |
|---|---|---|

## PART III - TTB CERTIFICATE

**This certificate is issued subject to applicable laws, regulations and conditions as set forth in the instructions portion of this form.**

| **19. DATE ISSUED**<br>02/19/2020 | **20. AUTHORIZED SIGNATURE, ALCOHOL AND TOBACCO TAX AND TRADE BUREAU** |
|---|---|

| FOR TTB USE ONLY | |
| --- | --- |
| **QUALIFICATIONS**<br>TTB has not reviewed this label for type size, characters per inch or contrasting background. The responsible industry member must continue to ensure that the mandatory information on the actual labels is displayed in the correct type size, number of characters per inch, and on a contrasting background in accordance with the TTB labeling regulations, 27 CFR parts 4, 5, 7, and 16, as applicable.<br><br>**STATUS**<br>THE STATUS IS SURRENDERED.<br><br>**CLASS/TYPE DESCRIPTION**<br>DESSERT /PORT/SHERRY/(COOKING) WINE | **EXPIRATION DATE (If any)** |

AFFIX COMPLETE SET OF LABELS BELOW

Image Type:
Brand (front) or keg collar
Actual Dimensions: 3.1 inches W X 3.9 inches H



Image Type:

Back
Actual Dimensions: 3.1 inches W X 3.9 inches H



Tommaso Romano, Leanne's great grandfather immigrated to the New World from Naples, Italy in 1905 bringing his winemaking skills with him. When Jon and Leanne married in Italy in 2013, they felt so connected to the land and the way of life that, when returned home, they planned their first vineyard on their family's land in El Dorado County. Jon and Leanne came to this place in their life by-way-of or "Via" the Romano family name and decided to name their winery Via Romano Vineyards.

RED WINE BLEND

VINO DEGLI
Amici
VIA ROMANO VINEYARDS

PRODUCED AND BOTTLED BY VIA ROMANO VINEYARDS
PLACERVILLE, CALIFORNIA • PRODUCT OF U.S.A

www.vrv.vin

GOVERNMENT WARNING: (1) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS.

750 ML. • ALC. 14.6% BY VOL. • CONTAINS SULFITES

**TTB F 5100.31** (06-2016)    PREVIOUS EDITIONS ARE OBSOLETE

# EXHIBIT C

## SETTLEMENT AGREEMENT

This AGREEMENT ("Agreement") is entered into the _5th_ day of _MAY_, 2020, by and between Amici Investments, LLC, a limited liability company organized under the laws of California and located at 475 Eleanor Drive, Woodside, CA 94062 ("Amici"), and Via Romano Vineyards Inc., a corporation organized under the laws of California and located at 3400 Carson Court, Suite D Placerville, California 95667 ("Via Romano") (collectively, "the Parties").

WHEREAS Amici produces, distributes, markets, and sells wine under the AMICI mark and claims first use of the AMICI trademark ("Amici Mark") on wine ("Goods"), in the U.S. as early as May 31, 1994, and obtained U.S. Trademark Registration No. 3053034 for AMICI for wines on January 31, 2006 ("Amici Registration");

WHEREAS Via Romano produces and offers for sale wine under the name and/or mark VINO DEGLI AMICI (the "Vino degli Amici Wine") and currently has in its possession or control approximately one hundred cases of such wine ("Vino degli Amici Inventory");

WHEREAS Amici believes that Via Romano's continued use of the VINO DEGLI AMICI mark is likely to result in consumer confusion with its Amici Mark and Amici Registration;

WHEREAS the Parties to this Agreement wish to resolve any conflict or potential conflict between them and to prevent any potential consumer confusion as between their respective brands;

THEREFORE, in consideration of the foregoing recitals, the mutual promises, covenants, and representations of the Parties set forth herein, the sufficiency of which is hereby acknowledged, the Parties agree to the following terms:

1.      Except as provided in Paragraph 4 below, Via Romano agrees to immediately cease any and all use of the name and/or mark VINO DEGLI AMICI, as well as any other name or mark incorporating the term "AMICI," including but not limited to such use on labels, advertising materials, and on its website, https://www.vrv.vin/;

2.      Except as provided in Paragraph 4 below, Via Romano shall  immediately cease producing, distributing, marketing, and selling alcohol beverage products in association with any name or mark that incorporates the term "AMICI";

3.      Via Romano shall immediately cease any and all internet search engine optimization for the term "AMICI" and any similar term, and must not otherwise engage in marketing tactics that attempt to derive benefit from the Amici Mark;

4.      Via Romano may only use the VINO DEGLI AMICI mark in connection with the marketing and sale of the remaining one hundred (100) cases of already labeled wine in the Vino degli Amici Inventory, and may only use the VINO DEGLI AMICI mark in connection with

1

such sales until October 20, 2020. After October 20, 2020, Via Romano must cease any and all use of the VINO DEGLI AMICI mark. If any wine labeled with the VINO DEGLI AMICI mark remains in Via Romano's possession or control after this date, Via Romano must destroy such wine and associated marketing materials. Under no circumstance may Via Romano sell more than one hundred (100) cases of Vino degli Amici Wine.

5.     Any use of the VINO DEGLI AMICI Mark on Via Romano's website in compliance with Paragraph 4 must not incorporate the term "AMICI" except as a part of the VINO DEGLI AMICI composite mark, and must not emphasize the AMICI element of that mark. Via Romano must also immediately remove the term "AMICI" as the varietal description for its "Granaccia, Sangiovese, and Pinot Grigio" blend and not use that term in the varietal description for any other wine, or for any other purpose. After October 20, 2020, Via Romano shall remove the Vino degli Amici Wine e-commerce listing from its website altogether.

6.     After October 20, 2020, Via Romano shall immediately surrender Certificate of Label Approval ("COLA") No. 20043001001068 and any other Certificates of a Label Approval ("COLAs") for its Vino degli Amici wine which it has obtained from the U.S. Alcohol and Tobacco Tax and Trade Bureau ("TTB"). Via Romano agrees to not seek future COLAs for any label that incorporates the AMICI Mark.

7.     After October 20, 2020, but not later than October 27, 2020, Via Romano shall provide to Amici written certification of its compliance with the above terms.

8.     Nothing in this Agreement prevents Via Romano from producing, marketing, and selling under a name or mark that does not incorporate the term "AMICI."

9.     Via Romano shall not apply for or otherwise attempt to register in or on any state or federal trademark register any mark encompassing the term "AMICI" for alcohol beverage products in Classes 32 or 33, nor shall Via Romano attempt to challenge Amici's rights in or to its Amici Marks.

10.     Amici hereby releases, acquits, and discharges Via Romano and its past and present parents, subsidiaries, divisions, current or former directors, officers, controlling persons, members, partners, managers, attorneys, employees, successors, and assigns from any and all claims, actions, causes of action, suits, judgments, demands, indemnities, controversies, dues, debts, damages, sums of money, attorneys' fees, costs, accounts, losses, warranties, covenants, contracts, agreements, promises, performances, doings, omissions, obligations, or liabilities of whatever nature, whether known or unknown, disclosed or undisclosed, direct or indirect, contingent or absolute, asserted or unasserted, in law or equity, contract or tort, or in any other form, name, nature, or description whatsoever that have arisen or which the releasing Party now has, ever had, or may have had, against Via Romano from the beginning of time to the Effective Date; *provided* that the releasing Party's rights to enforce any obligation of this Agreement shall survive the execution of this Agreement.

11.     Via Romano hereby releases, acquits and discharges Amici and its past and present parents, subsidiaries, divisions, current or former directors, officers, controlling persons,

SETTLEMENT AGREEMENT

members, partners, managers, attorneys, employees, successors, and assigns from any and all claims, actions, causes of action, suits, judgments, demands, indemnities, controversies, dues, debts, damages, sums of money, attorneys' fees, costs, accounts, losses, warranties, covenants, contracts, agreements, promises, performances, doings, omissions, obligations, or liabilities of whatever nature, whether known or unknown, disclosed or undisclosed, direct or indirect, contingent or absolute, asserted or unasserted, in law or equity, contract or tort, or in any other form, name, nature, or description whatsoever that have arisen or which the releasing Party now has, ever had, or may have had, against Amici from the beginning of time to the Effective Date; *provided* that the releasing Party's rights to enforce any obligation of this Agreement shall survive the execution of this Agreement.

12.     This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns, as well as the officers, directors, employees, and customers of the Parties and their respective successors and assigns.

13.     This Agreement supersedes, and its terms govern, all prior proposals, agreements, or other communications between the Parties, oral or written, regarding the subject matter hereof. This Agreement contains the entire understanding of the Parties with respect to its subject matter and may only be amended by mutual written agreement of the Parties, which written agreement must be signed by an authorized representative of each Party.

14.     The Parties may execute this Agreement in multiple counterparts, and counsel for the Parties may attach the original versions of all Parties' signatures to one or more counterparts, each of which shall be deemed an original.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their officers duly authorized as of the date and year set forth below.

VIA ROMANO VINEYARDS INC.

Dated:  5/5/2020

By _____

Name:  John Chewning
Title:  Chief Executive Officer

AMICI INVESTMENTS, LLC

Dated:
5/7/2020

By _____

Name:  Melissa Devore
Title:  President

SETTLEMENT AGREEMENT

3

# EXHIBIT D

# Via Romano Vineyards

**Leanne Davis**
Vice President

3400 Carson Court, Suite D
Placerville, CA
916-502-5502
leanne@viaromanovineyards.com

**Christopher J. Passarelli**
Dickenson, Peatman & Fogarty
1455 First Street, Suite 301
Napa, CA 94559
707-252-7122
cp@dpf-law.com

October 31, 2020

**Christopher J. Passarelli,**

To wrap up the use of the label name Vino Degli Amici, we discontinued the sale of our labeled wines on October 27, 2020 on all platforms including our website, VinoShipper, and the tasting room.  We have sold all of our inventory and surrendered our COLA on October 27, 2020.

Sincerely,

**Leanne Davis**



# EXHIBIT E

| **FOR TTB USE ONLY** | | | **DEPARTMENT OF THE TREASURY** |
|---|---|---|---|
| **TTB ID** 21223001000523 | | | **ALCOHOL AND TOBACCO TAX AND TRADE BUREAU** **APPLICATION FOR AND CERTIFICATION/EXEMPTION OF LABEL/BOTTLE APPROVAL** (See Instructions and Paperwork Reduction Act Notice on Back) |
| **1. REP. ID. NO.** *(If any)* | **CT** 88 | **OR** 01 | |

## PART I - APPLICATION

| **2. PLANT REGISTRY/BASIC PERMIT/BREWER'S NO.** *(Required)* BWN-CA-15537 | **3. SOURCE OF PRODUCT** *(Required)* ☑ Domestic ☐ Imported | **8. NAME AND ADDRESS OF APPLICANT AS SHOWN ON PLANT REGISTRY, BASIC PERMIT OR BREWER'S NOTICE. INCLUDE APPROVED DBA OR TRADENAME IF USED ON LABEL** *(Required)* MIRAFLORES WINERY, ALVAREZ VINEYARDS, LLC 2260 JAMES HUTTON DR PLACERVILLE CA 95667 VIA ROMANO VINEYARDS (Used on label) |
|---|---|---|
| **4. SERIAL NUMBER** *(Required)* 210005 | **5. TYPE OF PRODUCT** *(Required)* ☑ WINE ☐ DISTILLED SPIRITS ☐ MALT BEVERAGE | |
| **6. BRAND NAME** *(Required)* VIA ROMANO VINEYARDS | | **8a. MAILING ADDRESS, IF DIFFERENT** |
| **7. FANCIFUL NAME** *(If any)* | | |

| **9. FORMULA** | **10. GRAPE VARIETAL(S)** *(Wine Only)* N/A | **14. TYPE OF APPLICATION** *(Check applicable box(es))* |
|---|---|---|
| **11. WINE APPELLATION** *(If on label)* EL DORADO | | a. ☑ **CERTIFICATE OF LABEL APPROVAL** b. ☐ **CERTIFICATE OF EXEMPTION FROM LABEL APPROVAL** "For sale in _____ only" (Fill in State abbreviation.) c. ☐ **DISTINCTIVE LIQUOR BOTTLE APPROVAL. TOTAL BOTTLE CAPACITY BEFORE CLOSURE ____ ____** (Fill in amount) d. ☐ **RESUBMISSION AFTER REJECTION TTB ID. NO. _____** |
| **12. PHONE NUMBER** (707) 695-0631 | **13. EMAIL ADDRESS** | |

15. SHOW ANY INFORMATION THAT IS BLOWN, BRANDED, OR EMBOSSED ON THE CONTAINER (e.g., net contents) ONLY IF IT DOES NOT APPEAR ON THE LABELS AFFIXED BELOW. ALSO, SHOW TRANSLATIONS OF FOREIGN LANGUAGE TEXT APPEARING ON LABELS.

"Buon'Amici" translates from Italian to "Good Friends"

## PART II - APPLICANT'S CERTIFICATION

Under the penalties of perjury, I declare; that all statements appearing on this application are true and correct to the best of my knowledge and belief; and, that the representations on the labels attached to this form, including supplemental documents, truly and correctly represent the content of the containers to which these labels will be applied. I also certify that I have read, understood and complied with the conditions and instructions which are attached to an original TTB F 5100.31, Certificate/Exemption of Label/Bottle Approval.

| **16. DATE OF APPLICATION** 08/11/2021 | **17. SIGNATURE OF APPLICANT OR AUTHORIZED AGENT** (Application was e-filed) | **18. PRINT NAME OF APPLICANT OR AUTHORIZED AGENT** MARCO CAPPELLI |
|---|---|---|

## PART III - TTB CERTIFICATE

This certificate is issued subject to applicable laws, regulations and conditions as set forth in the instructions portion of this form.

| **19. DATE ISSUED** 08/11/2021 | **20. AUTHORIZED SIGNATURE, ALCOHOL AND TOBACCO TAX AND TRADE BUREAU** |
|---|---|

*Shannon Jackson*

| FOR TTB USE ONLY | |
|---|---|
| **QUALIFICATIONS**<br>TTB has not reviewed this label for type size, characters per inch or contrasting background. The responsible industry member must continue to ensure that the mandatory information on the actual labels is displayed in the correct type size, number of characters per inch, and on a contrasting background in accordance with the TTB labeling regulations, 27 CFR parts 4, 5, 7, and 16, as applicable.<br><br>**STATUS**<br>THE STATUS IS APPROVED.<br><br>**CLASS/TYPE DESCRIPTION**<br>DESSERT /PORT/SHERRY/(COOKING) WINE | **EXPIRATION DATE (If any)** |

AFFIX COMPLETE SET OF LABELS BELOW

Image Type:

Brand (front) or keg collar
Actual Dimensions: 3.25 inches W X 5 inches H



Image Type:

Back
Actual Dimensions: 3 inches W X 4.25 inches H



Tommaso Romano, Leanne's great-grandfather, immigrated to the New World from Naples, Italy in 1905 bringing his winemaking skills with him. When Jon and Leanne married in Italy in 2013, they felt so connected to the land and the way of life that, when they returned home, they planned their first vineyard on their family's land in El Dorado County. Jon and Leanne came to this place in their life by-way-of or "Via" the Romano family name and decided to name their winery Via Romano Vineyards.

RED WINE BLEND

**BUON'AMICI**

VIA ROMANO VINEYARDS

PRODUCED AND BOTTLED BY VIA ROMANO VINEYARDS
PLACERVILLE, CALIFORNIA • PRODUCT OF U.S.A
www.vrv.vin

GOVERNMENT WARNING: (1) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MACHINERY AND MAY CAUSE HEALTH PROBLEMS.

750 ML. • ALC. 14.4% BY VOL. • CONTAINS SULFITES

TTB F 5100.31 (06-2016)    PREVIOUS EDITIONS ARE OBSOLETE